**EXHIBIT 1**

## IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA
### CIVIL ACTION

SYNDIKOS INVESTMENTS, LLC,

        Plaintiff,                                Case No. 22-10744

        v.

MELONIE L. KOTCHEY &
KENNETH JAMES SCHULTZ, JR.,

        Defendants.

Type of Document:_____Amended Complaint in Civil Action_____

If this is a Complaint, designate whether the case is subject to Compulsory Arbitration (jurisdictional amount $35,000) or not.

    _____ amount in controversy does not exceed $35,000

    ____X____ amount in controversy exceeds $35,000

    _____ issues in case are not subject to Compulsory Arbitration

Does this complaint involve consumer credit card collection _____ Y __X__ N

Does this complaint involve residential mortgage foreclosure proceedings ___ Y _X_ N

Filed on behalf of __Syndikos Investments, LLC_____ Plaintiff

Counsel of record for this party__Zachary P. Gelacek, Esquire____

Supreme Court I.D. No. __207161_____

**GELACEK LEGAL SERVICES LLC**
310 Grant Street, Suite 2901
(724) 664-5022 (phone)
(412) 261-5886 (fax number)
zpg@gelaceklegal.com (e-mail address)

**IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA**
**CIVIL ACTION**

SYNDIKOS INVESTMENTS, LLC,

        Plaintiff,                               Case No. 22-10744

      v.

MELONIE L. KOTCHEY &
KENNETH JAMES SCHULTZ, JR.,

        Defendants.

## NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

1

Office of Prothonotary, Butler County
Butler County Government Center
124 West Diamond Street
Butler, PA 16001
(724) 284-5214

Butler County Bar Association
240 S. Main Street
Butler, PA 16001
(724) 841-0130

2

IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA
CIVIL ACTION

SYNDIKOS INVESTMENTS, LLC,

        Plaintiff,                           Case No. 22-10744

      v.

MELONIE L. KOTCHEY &
KENNETH JAMES SCHULTZ, JR.,

        Defendants.

### AMENDED COMPLAINT

1.    Plaintiff Syndikos Investments, LLC, is a limited liability company formed under the laws of the State of Delaware which maintains its principal place of business at 220 South Main Street, Suite 105, Butler, Butler County, Pennsylvania. Plaintiff does business under the trade name COMPASSIONATE CERTIFICATION CENTERS.

2.    Defendant Melonie L. Kotchey is an individual who resides at 27 Ann Street, Etna, Allegheny County, Pennsylvania. Defendant Kotchey also maintains a residence at 114 North Vot Lane, Brady's Bend Township, Armstrong County, Pennsylvania.

3.    Defendant Kenneth James Schultz, Jr., is an individual who resides at 27 Ann Street, Etna, Allegheny County, Pennsylvania. Defendant Schultz also maintains residences at 114 North Vot Lane, Brady's Bend Township, Armstrong County, Pennsylvania and, upon information and belief, 36550 Chester Road, Apartment 501, Avon, Lorain County, Ohio.

4.    Defendants are married and cohabitate.

1

5. Plaintiff is engaged in the business of supplying medical services as well as health and wellness products. It was founded by Defendant Kotchey and Bryan Doner, D.O., a doctor of osteopathic medicine who resides in Valencia, Butler County, Pennsylvania.

6. Defendant Kotchey and Dr. Doner served as the original "Managing Members" of Plaintiff. In that role, Defendant Kotchey and Dr. Doner jointly exercised the power to manage Plaintiff's business and affairs.

7. At its inception, Dr. Doner – in addition to his role as Managing Member – occupied the office of Chief Executive Officer ("CEO") of Plaintiff, while Defendant Kotchey also served as its Chief Operating Officer.

8. Since its establishment, multiple individuals have made equity investments in Plaintiff. Garden-variety equity investors in Plaintiff are deemed "Members." In addition to Defendant Kotchey and Dr. Doner (each of whom own an approximate 35% stake), there are nineteen Members of Plaintiff with varying ownership stakes in the business.

9. In or around 2017, Defendant Kotchey was promoted to CEO of Plaintiff, while Dr. Doner transitioned to the role of Chief Medical Officer.

10. As CEO, Defendant Kotchey employed her husband, Defendant Schultz, to assist with Plaintiff's marketing efforts. Until recently, as discussed in more detail below, Defendant Schultz's role at Plaintiff included primary responsibility for its products sales.

2

11. In early 2019, Defendant Kotchey informed Dr. Doner that Plaintiff's performance had suffered so badly under her leadership that it would be insolvent without a significant infusion of capital.

12. Defendant Kotchey indicated to Dr. Doner that she was not able to locate a third-party source of the funding that she stated was necessary to continue Plaintiff's operations. Consequently, Dr. Doner took personal loans in order to loan – through multiple transactions that eventually were consolidated into a single promissory note in April 2019 – Plaintiff $240,000.00 in operating capital (the "Doner Loan").

13. Plaintiff agreed to repay the principal amount of the Doner Loan, together with interest on the unpaid principal balance, through monthly installments.

14. For a period of time after funding the Doner Loan, Dr. Doner received from Plaintiff timely monthly installment repayments as and when due.

15. Plaintiff did not, however, make the full monthly installment repayment due and owing on the Doner Loan in October 2021. At that time, Defendant Kotchey represented to Dr. Doner that Plaintiff lacked the financial wherewithal to pay the agreed-upon monthly installment amount. From then through February 2022, Dr. Doner accepted one-half of the full monthly installment amount due each month on account of Defendant Kotchey's representations. From March 2022 to the present, Plaintiff has not tendered any portion of the agreed-upon monthly installment repayments due and owing on the Doner Loan.

16. Dr. Doner contacted Defendant Kotchey on multiple occasions in order to inquire as to why Plaintiff ceased repaying the Doner Loan. On each occasion on which Dr. Doner was able to speak with Defendant Kotchey, she represented that Plaintiff's

3

financial condition was dire and that it therefore lacked sufficient funds both to repay the Doner Loan and to continue as a going concern.

17. Defendant Kotchey proposed as a solution to Plaintiff's failure to repay the Doner Loan that Dr. Doner (i) forgive the remaining principal balance and interest due on the Doner Loan and (ii) walk away from his investment in Plaintiff and cease any role in the business going forward by resigning as Managing Member and formally abandoning his Membership stake in the entity.

18. As CEO, Defendant Kotchey closed many of Plaintiff's business locations and terminated many of its former employees over the course of the COVID-19 pandemic. Her stated rationale for these actions was the purported poor performance of the business.

19. Recently, one former employee contacted Dr. Doner to inform him – in his role as Managing Member of Plaintiff – of certain wrongful or otherwise suspicious activities in which the former employee observed Defendant Kotchey engage in her role as CEO and Managing Member of Plaintiff.

20. After receiving that troubling information, Dr. Doner – in his role as Managing Member of Plaintiff – commenced an internal investigation into the allegations.

21. In the course of that investigation, third-party experts were retained to check Defendant Kotchey's background. A background search revealed the following tax liens, which have been filed against Defendants in the past five years: (i) United States Internal Revenue Service federal tax liens in the amounts of $396,251 and

4

$41,097, and (ii) a Commonwealth of Pennsylvania Department of Revenue state tax lien in the amount of $8,791.

22. Plaintiff's investigation into Defendant Kotchey's actions during her time as CEO of its business further revealed that Defendant Kotchey engaged in suspected forgery both in her and Defendant Schultz's personal affairs and in the course of activities she conducted on behalf of Plaintiff.

23. A team of accountants, lawyers, and private investigators currently is continuing Plaintiff's internal investigation into Defendants' conduct. The team has identified additional suspicious activity – including numerous transfers of Plaintiff's funds to bank accounts controlled by one or both Defendants but not associated with Plaintiff's business – by Defendants in the past several months.

24. This internal investigation is expected to continue for the foreseeable future, and its scope will encompass all of Defendants' actions and omissions while one or both of them was employed by or associated with Plaintiff.

25. As a result of the initial findings in Plaintiff's internal investigation, Dr. Doner exercised his authority as Managing Member of Plaintiff to expel Defendants from any position of authority within the business.

26. Accordingly, Dr. Doner reached out to several other Member-owners of Plaintiff to share findings in the internal investigation.

27. Those discussions resulted in an agreement by a group of Members who own more than half of the equity interests in Plaintiff (the "Majority Member Group") to exercise their collective authority under Plaintiff's governing documents to remove: (i) Defendant Kotchey as a Managing Member of Plaintiff, (ii) Defendant Kotchey from the

position of CEO of Plaintiff, and (iii) both Defendants from any other role as an employee or agent of Plaintiff.

28. The aforementioned agreement of the Majority Member Group was fully and finally executed on September 12, 2022 (the "Majority Member Agreement").

29. As a result of the Majority Member Agreement, Dr. Doner became, and currently occupies the role of, sole Managing Member of Plaintiff. He exercised his powers in that respect by informing Defendants of the Majority Member Group's actions (including the Majority Member Agreement) at the beginning of the business day on September 13, 2022.

30. Since receiving notice of the Majority Member Group's removal of them from any role with close involvement in Plaintiff's business, Defendants have responded with a campaign of unlawful activity with an apparent goal of either regaining their former roles in the operations of Plaintiffs business or, in the event those efforts fail, destroying Plaintiff's business and forcing it into insolvency proceedings and/or using such efforts to foil Plaintiff's ability to bring their unlawful acts to light.

31. Defendants' retributive campaign has included, but is not limited to:

    a. making unauthorized transfers of funds from Plaintiff's operating accounts to Defendants' personal account(s);

    b. contacting Plaintiff's IT vendor to attempt to override Defendants' removal from Plaintiff's electronic communication and business systems;

    c. after measures were put in place to prevent any further unauthorized withdrawals of Plaintiff's funds from its operating accounts, contacting the banks holding

6

those accounts in order to attempt to regain control of them and access to the funds they contain;

   d.  interfering with Plaintiff's merchant accounts, including effecting the shutdown of all such accounts for periods of time by supplying false information to Plaintiff's merchant account vendor; and

   e.  causing the vendor that supplies domain- and website-hosting services to Plaintiff to remove Plaintiff's website (the "Website") from the internet by supplying false or otherwise incorrect or misleading information to that vendor.

  32.  Defendants' interference campaign has caused substantial damage to Plaintiff's business and its prospects of continuing solvency.  In addition to removing thousands of dollars from Plaintiff's operating accounts without authorization, the interruptions Defendants have caused with Plaintiff's supply of third-party services have resulted in Plaintiff losing its ability to operate or generate revenue for large periods of time since Defendants were terminated and Defendant Kotchey removed from her position of control.

  33.  The loss in revenue to Plaintiff from Defendants' interference campaign has already forced Plaintiff to seek and obtain an emergency loan from the individuals in the Majority Member Group just so that Plaintiff can pay its employees.

  34.  Defendants' unlawful conduct has created a full-blown emergency for Plaintiff and Dr. Doner.  If Defendants' unlawful interference campaign cannot be halted in the immediate future, Plaintiff will be unable to continue as a going concern.  In such a scenario, multiple members of the local community will lose their employment and all of Plaintiff's Members will lose their investments.

35. In the event that Defendants are successful in unlawfully forcing Plaintiff into insolvency, Dr. Doner will suffer particularly acute damage. He currently has invested or loaned $250,000 of his own money in and to Plaintiff. Moreover, and as stated above, Dr. Doner was forced to take a personal loan – and consequently risk his and his young family's financial security – to obtain much of that funding. Accordingly, Defendants' campaign puts his family's security at risk.

36. Defendants, on the other hand, have not invested a single dollar in personal funds to obtain equity in Plaintiff and therefore stand to lose the least of Plaintiff's Members. Consequently, they continue to demand that they be reinstated so that they can once again use Plaintiff as their personal piggy bank (while also likely destroying, to the greatest extent possible, any and all evidence of any unlawful activities in which they engaged when they functioned as the primary operators of Plaintiff).

## COUNT I – CONVERSION
### (against Defendants)

37. Plaintiff repeats and re-alleges all of the allegations contained in the preceding paragraphs of the Complaint as if they were set forth fully herein.

38. Since being removed from their roles in the day-to-day operation of Plaintiff's business, Defendants withdrew – without authorization – thousands of dollars from Plaintiff's operating bank accounts, which they transferred into their personal account(s).

8

39. Defendants also have interfered with Plaintiff's use or possession of several items of corporate property in that time period, including, without limitation, Plaintiff's merchant account and Website.

40. In each of the aforementioned instances, Defendants' acts in depriving Plaintiff of, or interfering with Plaintiff's use or possession of, its lawful property amounts to the tort of conversion.

41. As a direct and proximate result of Defendants' conversion of Plaintiff's property, Plaintiff has sustained and will continue to sustain damages in an amount that exceeds $35,000, to be proven at trial.

## COUNT II – TORTIOUS INTERFERENCE
### (against Defendants)

42. Plaintiff repeats and re-alleges all of the allegations contained in the preceding paragraphs of the Complaint as if they were fully set forth herein.

43. Through the operation of its business, Plaintiff maintains contractual relations with various third parties such as its merchant-account vendor, its domain- and website-hosting vendor, and the customers who purchase its services and products.

44. Through the services and products it offers, Plaintiff also has created the prospect of relations with individuals who may desire those items but have not yet engaged in commercial transactions with Plaintiff.

45. As set forth above, Defendants have engaged in a purposeful, malignant campaign to interfere with Plaintiff's relationships with its vendors, customers, and prospective customers by, among other things, contacting Plaintiff's third-party service providers and communicating false or otherwise misleading or incorrect information.

9

Defendants' efforts in that respect have caused those vendors to shut down Plaintiff's merchant account and Website, two critical components of its business infrastructure.

46. Defendants' endeavors in their campaign of interference with Plaintiff's commercial operations are not protected from this Court's scrutiny by any legal privilege or justification.

47. Defendants' conduct has caused and occasioned actual, and indeed substantial, damage to Plaintiff. As stated above, if Defendants are able to continue their campaign of interference with Plaintiff's operations with impunity, Plaintiff may not be able to continue as a going concern. In such an event, the individuals who are employed by or who have invested in Plaintiff will suffer severe consequences. The individuals who consume Plaintiff's products and services – as well as prospective consumers of those items – also will be adversely affected.

48. As a direct and proximate result of Defendants' tortious interference with Plaintiff's operations, Plaintiff has sustained and will continue to sustain damages in an amount that exceeds $35,000, to be proven at trial.

### COUNT III – VIOLATION OF THE UNITED STATES' COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030 *et seq.*)

#### (against Defendant Kotchey)

49. Plaintiff repeats and re-alleges all of the allegations contained in the preceding paragraphs of the Complaint as if they were fully set forth herein.

50. After the Majority Member Agreement removing Defendants from their roles in Plaintiff's operations was executed, Defendant Kotchey lacked authority to access Plaintiff's account with third-party service provider Bluehost (the "Bluehost Account") through which Plaintiff controls public access to its primary business domain,

10

<www.compassionatecertificationcenters.com>, (the "Domain") and its commercial Website which – at all relevant times before Defendant Kotchey learned of the Majority Member Agreement – always had been hosted at the Domain.

51. Despite her lack of authority to access the Bluehost Account and efforts of Plaintiff's IT personnel to revoke that access, Defendant Kotchey managed to gain entry into the Bluehost Account on September 13, 2022, and remove the Website from the internet. Upon information and belief, Defendant Kotchey accessed the Bluehost Account by falsely representing to Bluehost personnel that she was an authorized user of that account.

52. The Bluehost server on which the Website is hosted and the Bluehost Account through which the Domain is registered are "protected computer[s]" within the meaning of 18 U.S.C. § 1030(e)(2) because they are data storage and/or communication facilities used in or affecting interstate commerce.

53. Defendant Kotchey intentionally accessed the Bluehost server on which the Website is hosted and caused the Website's removal from public access via the internet. Defendant Kotchey did not have authorization to access the Bluehost server on which the Website is hosted because Plaintiff is the only individual or entity authorized to access and make changes to its own Website.

54. As a direct and proximate result of Defendant Kotchey's conduct, Plaintiff has suffered, and will continue to suffer, loss and damage within the meaning of 18 U.S.C. § 1030(e)(8) and (11) in excess of $5,000 and in an amount to be determined at trial, including but not limited to, impairment or damage to data caused by Defendant Kotchey's period of unauthorized control of the Website and Domain; cost and harm in

11

connection with investigation and recovery efforts to secure the restoration of the Website and its data; and cost and harm in connection with Plaintiff's interruption in services, such as Plaintiff's inability to conduct commerce and communicate with customers and prospective customers through the Website and Domain and to reap the benefits of its investments in (or maintain the continuous process of improving) those tools of commerce. Plaintiff will continue to suffer such harm until Defendant Kotchey's access to the Bluehost Account is preliminarily and permanently enjoined, and Plaintiff's access is restored.

55. The law permits any person who has suffered damage or loss by reason of a violation of the Act to bring a civil action against the violator for compensatory damages and injunctive or other equitable relief.

56. In undertaking the wrongful conduct alleged herein, Plaintiff acted willfully, intentionally, and with oppression, fraud, and malice in conscious disregard of Plaintiff's rights to the harm of Plaintiff.

## COUNT IV – CIVIL CONSPIRACY

### (against Defendants)

57. Plaintiff repeats and re-alleges all of the allegations contained in the preceding paragraphs of the Complaint as if they were fully set forth herein.

58. Defendants have combined to engage in a campaign of unlawful behavior motivated by malice towards Plaintiff's sole Managing Member, Dr. Doner, and with the specific, unlawful purpose of causing injury to Plaintiff's business and obtaining leverage to extort further objects of value from Plaintiff.

59. One example of an overt act in which Defendants have engaged in pursuit of their common, unlawful purpose is their unauthorized transfer of funds from Plaintiff's operating account to their personal account(s) described above.

60. As a direct and proximate result of Defendants' unlawful civil conspiracy, Plaintiff has sustained and will continue to sustain damages in an amount that exceeds $35,000, to be proven at trial.

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and against Defendants as well as an order:

A. declaring that Defendants have committed the torts of conversion, tortious interference, and civil conspiracy as well as violated the United States Computer Fraud and Abuse Act;

B. enjoining and/or restraining Defendants, pursuant to Pa.R.C.P. 1531 and 18 U.S.C. § 1030(g), (i) from continuing to convert Plaintiff's property, tortiously interfere with Plaintiff's current and prospective business relationships, violate the United States Computer Fraud and Abuse Act, and/or unlawfully conspire to damage Plaintiff's business, and (ii) to remediate Defendants' unlawful activities set forth herein;

C. awarding damages in an amount sufficient to compensate Plaintiff for the injuries it has sustained as a consequence of Defendants' unlawful acts set forth herein;

D. awarding Plaintiff punitive, exemplary, and/or statutory damages, where applicable, in an amount sufficient to punish and deter Defendants from engaging in further intentional, unlawful conduct;

E. granting to Plaintiff the costs of this action and reasonable attorneys' fees and other litigation expenses incurred in connection with this action;

13

F. granting Plaintiff prejudgment interest and costs; and

G. granting such other, different, and additional relief as this Court deems just and proper.

Respectfully submitted,

Dated: September 30, 2022

_____
Zachary P. Gelacek
Pennsylvania I.D. No. 207161

**GELACEK LEGAL SERVICES LLC**
310 Grant Street, Suite 2901
Pittsburgh, Pennsylvania 15219
(724) 664-5022 (phone)
(412) 261-5886 (fax)
zpg@gelaceklegal.com

Attorney for Plaintiff

14

## VERIFICATION

I, Bryan Doner, D.O., in my capacity as the sole Managing Member of Plaintiff Syndikos Investments, LLC, verify that the facts contained in the foregoing Amended Complaint are true and correct to the best of my personal knowledge or information and belief. I understand that false statements contained herein are subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Dated: September 30, 2022                    _____
                                              Bryan Doner, D.O.